IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

TANARIA HEARD, Individually and as Special Administrator     PLAINTIFF
of the Estate of Dezmen McBride, Deceased

vs.                 NO. 4:24-cv-00325-KGB

JEFFERSON COUNTY, ARKANSAS, et al;             DEFENDANTS

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

The Plaintiff filed her Third Amended Complaint (hereafter "Complaint," Doc. # 16[1], the operative Complaint in this case) on March 25, 2024, alleging, under 42 U.S.C. 1983[2] and Arkansas law, that her and her decedent's rights were violated when the Defendants allegedly subjected her decedent to excessive force and/or failed to provide her decedent with appropriate medical care during his incarceration in the Jefferson County Detention Center in 2021. Doc. # 36. For the reasons set forth herein, the Separate Jefferson County Defendants are entitled to qualified immunity and summary judgment as a matter of law.

## II. ARGUMENT

In her Complaint, Plaintiff Tanaria Heard alleges that her decedent, Dezmen McBride, was subjected to excessive force and was not provided appropriate medical care during his incarceration at the Jefferson County jail in 2021, allegedly resulting in his death. For the reasons set forth herein,

---

[1] After the Plaintiff's filing of her Third Amended Complaint, the case was removed to this Court on April 11, 2024.

[2] In her Third Amended Complaint, the Plaintiff asserts constitutional claims under both 42 U.S.C. 1983 and the Arkansas Civil Rights Act ("ACRA"), but these claims should be analyzed coterminously under the same precedents pursuant to Arkansas law. The ACRA expressly states, in Arkansas Code Annotated § 16-123-105 (c), that, in construing the ACRA, courts "must look for guidance to state and federal decisions pertaining to actions filed pursuant to the federal civil rights act, 42 U.S.C. § 1983." *See also Island v. Buena Vista Resort,* 352 Ark. 548, 103 S.W.3d 671 (2003); *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481 (8th Cir. 2002). To the extent that the Plaintiff argues that her section 1983 and ACRA claims should be analyzed differently, such arguments will be addressed on reply.

and in the summary judgment moving papers filed by Separate Defendant Samuel Baker, Jr., the Separate Jefferson County Defendants are entitled to summary judgment as a matter of law.

## Summary Judgment Standard

"Summary judgment is appropriate when there is no dispute between the parties as to any genuine issues of material fact and when the moving party is entitled to a judgment as a matter of law." *Get Away Club, Inc. v. Coleman*, 969 F.2d 664 (8th Cir. 1992). All facts and inferences are looked at in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## *Celotex* "Scintilla Rule"

In *Celotex v. Catrett,* 477 U.S. 317 (1986), the seminal case on interpreting the federal summary judgment rule, F.R.C.P. 56(c), the Supreme Court carefully explained that a party seeking summary judgment always has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, *if any*,' which it believes demonstrate the absence of a genuine issue of material fact." The *Celotex* Court held ultimately that the movant need not submit supporting affidavits in order to prevail if he can show from the other material on file the absence of a genuine issue of material fact. The case may properly be cited for the proposition that a party moving for summary judgment may shift the burden of proof by showing that the plaintiff will be unable to offer any proof on an essential element of his case (generally referred to as the "scintilla rule"). The Court, in reaching its conclusion, explained that its holding in *Adickes v. Kress,* 398 U.S. 144, a 1970 case which construed Rule 56(c), did not mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the non-moving party bears the burden of proof, but instead, the moving party may discharge its burden by pointing out to the

district court that "there is an absence of evidence to support the non-moving party's case." The movant may carry its burden "with or without supporting affidavits." *See Celotex supra.* It is the non-movant who must go beyond the pleadings and by affidavit, depositions or other *substantive* evidence designate specific facts showing that there is a genuine issue for trial. *Id.* (Emphasis added).

### Only 3 Defendants: AACRMF, Jefferson County, and Samuel Baker

The Plaintiff has sued the (1) Association of Arkansas Counties Risk Fund ("AACRMF"), (2) Jefferson County, (3) Sheriff LaFayette Woods, Jr., in his official capacity only, and (4) Samuel Baker, in his individual official capacities. It is well-settled that a suit against a county official or employee, in her official capacity, is the equivalent of a suit against the county itself. *See Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991). Official capacity suits represent "only another way of pleading an action against an entity of which an officer is an agent." *See Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978). In short, "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. At 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985). In fact, when officials of a county die or leave office, their successors *automatically* assume their roles in the litigation. *See Hafer*, 502 U.S. at 25 (citing Fed. R. Civ. Proc. 25(d)(1); Fed. Rule App. Proc. 43(c)(1); and S. Ct. Rule 35.3). Furthermore, multiple official capacity claims against officials and employees of the same entity are legally identical and redundant, such that the dismissal of one precludes further litigation of any of the others. *See Baker v. Chisom*, 501 F.3d 920 (8th Cir. 2007), *cert denied*, 554 U.S. 902.

In the end, the claims against Sheriff Woods and Samuel Baker, in their official capacities, are legally redundant and identical to the claim(s) against Jefferson County. As such, there are really only three Defendants in this case: the AACRMF, Jefferson County, and Samuel Baker.

*This motion is filed for Separate County Defendants AACRMF and Jefferson County.*

**A.     No Wrongful Death, Negligence, Gross Negligence, Outrage, and/or Vicarious Liability - Tort/Vicarious Liability Immunity and Inapplicability**

The Plaintiff has pleaded wrongful death, gross negligence, and outrage claims (Counts[3] II, III, & X, Doc. # 16, ¶¶ 9-65 & 101-107) against the Separate County Defendants in this case, but those claims are barred by statutory immunity. Under Arkansas law, the Defendants are "immune... from suit for damages" in tort and from vicarious liability under Arkansas law. Ark. Code Ann.§ 21-9-301, entitled "Tort Liability - Immunity Declared" provides:

> (a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, … and all other political subdivisions of the state … shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.
>
> (b) No tort action shall lie against such political subdivision because of the acts of their agents and employees.

The immunity granted to a county *extends to the county's officials and employees. Matthews v. Martin*, 280 Ark. 245, 658 S.W.2d 374 (1983)(emphasis added). Jefferson County does not have applicable insurance. *See* Ex. 1-2.

The County's membership in the Association of Arkansas Counties Risk Management Fund (AACRMF) also does not negate immunity, as the courts have uniformly and specifically found, on multiple occasions over decades, that "the AACRMF is not liability insurance" and that "coverage for negligent tort liability is expressly excluded" from AACRMF membership.[4] *See Hearnsberger v. Bradley County*, 2007 U.S. Dist.Ct. LEXIS 60383, 2007 WL 2350287, No. 06-2076 (W. D. Ark. 2007) (citing *Kauffman v. Board of Trustees of the Ass'n of Ark. Counties Risk Mgmt. Fund*, No. 87-2076 (W. D. Ark. 1988)). Additionally, as the Court held in the *Hearnsberger* case, "even if [the] County had negligence/tort liability insurance, the proper defendant to such a suit would be the

---

[3] The Plaintiff's "Counts" in her Third Amended Complaint are numbered in internally inconsistent fashion.  For example, the "wrongful death" claim's heading announces "first count," but the Roman numeral affixed to that count is "II."  This motion uses the Roman numerals as a reference, with the paragraph numbers to avoid confusion.

[4] The Defendants have also asserted this fact by affidavit and the Plaintiff can offer no rebutting proof.  *See* Ex. 1-2

alleged insurer." *Id.* (citing Ark. Code Ann. § 23-79-210). Notably, this is <u>not</u> the AACRMF, as the fund is not insurance and does not provide coverage for negligent tort liability; as such, the AACRMF is entitled to summary judgment as a matter of law. **Since that is the only reason for which the AACRMF has been sued,** *see* **Doc. # 16, ¶5, the AACRMF is entitled to summary judgment as a matter of law.**

Statutory tort immunity bars any tort claim(s) against the Separate Defendants, including, but not limited to wrongful death[5] and gross negligence claims. *Sledge v. City of Pine Bluff by and Through Washington*, No. CV-20-547, 2022 Ark. App. 23 (Jan. 19, 2022 Ark. Ct. App.) (finding municipality entitled to statutory immunity as to claim of gross negligence and reckless indifference in wrongful death action); *Cherry v. Tanda, Inc.*, 327 Ark. 600, 614-15, 940 S.W.2d 457, 463 (1997) (affirming immunity for city against wrongful death claim); *Cousins v. Dennis*, 298 Ark. 310, 312, 767 S.W.2d 296, 297 (1989) (finding Ark. Code Ann. § 21-9-301 immunity extends to employees of municipality). Clearly established law also bars a constitutional §1983/ACRA action based on allegations of negligence. *see, e.g., Hart v. City of Little Rock*, 432 F.3d 801, 805 (8th Cir. 2005) And claims based on vicarious liability are not permitted. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009); *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). Alternatively, even if statutory immunity did not bar the Plaintiff's negligence/wrongful death claims against the County (it does), such claims would still fail as a matter of law because the Plaintiff can offer no proof of negligence by the County.

The immunity under Ark. Code Ann. § 21-9-301 also applies to outrage claims where, as here, the allegedly outrageous conduct was allegedly negligent. *See Williams v. Mannis*, 889 F.3d 926, 932-33 (8th Cir. 2018) (applying Ark. Code Ann. §21-9-301 and granting immunity to claim

---

[5] The Eighth Circuit Court of Appeals has also specifically held, long ago, that an Estate pursuing an action under 42 U.S.C. §1983 may recover damages *only* for constitutional injury to the decedent, not the heirs and/or the Estate. *Andrews v. Neer*, 253 F.3d 1052, 1064 (8h Cir. 2001) (administratrix "cannot shoehorn recovery" for alleged damages to heirs or Estate into section 1983 action).

of outrage under Arkansas law); *Dillard v. City of Springdale, Arkansas*, No. 5:17-CV-5089, 2022 WL 403287, at 9 (W.D. Ark. Feb. 9, 2022)(Immunity granted under Ark. Code Ann. §21-9-301 on three intentional tort claims, including outrage).

Even if the Plaintiff's outrage claim were not barred by statutory immunity, it would, nevertheless, fail as a matter of law. To establish outrage under Arkansas law, a plaintiff must show: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable man could be expected to endure it. *Shepherd v. Washington County*, 331 Ark. 480, 507-08, 962 S.W.2d 779 (1998) (citing *Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997)). The tort of outrage is not favored by Arkansas courts, and clear-cut proof is required to establish the elements in outrage cases. *See, e.g.*, *Croom v. Younts*, 323 Ark. 95, 913 S.W.2d 283 (1996); *Cordes v. Outdoor Living Center, Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989); *Harris v. Ark. Book Co.*, 287 Ark. 353, 700 S.W.2d 41 (1985); *Givens v. Hixson*, 275 Ark. 370, 631 S.W.2d 263 (1982). *See also Braden v. Mountain Home Sch. Dist.*, 903 F.Supp.2d 729, 739 (W.D. Ark. 2012) ("Traditionally, courts have taken a very narrow view of claims purporting to arise under the tort of outrage.) Courts have consistently found that conduct far more egregious than that alleged by the Plaintiffs in this case is not sufficient to state a claim for the tort of outrage under Arkansas law. *See, e.g.*, *Owens v. Alltell Communications, Inc.*, Case No. 4:06CV573GH, (E.D. Ark. Oct. 30, 2006) (dismissing outrage claim brought by employee who alleged that employer kicked him and noting that "[o]ne kick, without more, cannot as a matter of law be considered 'extreme and outrageous conduct' which goes 'beyond all possible bounds of decency.'"); *Shepherd*, *supra* (dismissing outrage claim by the spouse of a victim killed by an inmate where the sheriff ignored the violent nature of the inmate, knew the inmate was an escape risk, but directed the victim, who was not a certified law enforcement officer, and had a history of failing to control inmates, to escort the

inmate to a private clinic for medical treatment); *Holloman v. Keadle*, 326 Ark. 168, 931 S.W.2d 413 (1996) (employer's repeated curses, racial slurs, degrading remarks, and threats of violence against the plaintiff were not sufficient to state a claim for the tort of outrage); *City of Green Forest v. Morse*, 316 Ark. 540, 873 S.W.2d 154 (1994) (cursing, anger, accusatory questioning, and threats of arrest could not sustain an outrage claim); *Smith v. American Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683 (1991) (dismissing outrage claim where plaintiff alleged that he was wrongfully terminated after his shift leader had hit him during a dispute). In this case, the Plaintiff's allegations against the Separate Jefferson County Defendants cannot, as a matter of law, be considered extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community. As such, the Plaintiffs' outrage claim should be dismissed as a matter of law.

For these reasons, the Separate County Defendants are entitled to summary judgment as a matter of law with respect to the Plaintiff's claims for negligence, wrongful death, vicarious liability, and outrage fails.

**B.     No Official Capacity/County Liability for 42 U.S.C. §1983/ACRA Claims**

The Plaintiff's primary claims, pleaded under 42 U.S.C. 1983 and the Arkansas Civil Right Act (ACRA) (Doc. # 16, Count IV-IX, ¶¶ 66-100), is that her decedent was subjected to excessive force and denied appropriate medical care during his incarceration at the Faulkner County jail in 2022, which allegedly caused his death. Doc. # 36. For the reasons discussed herein, however, the Plaintiff cannot prove excessive force or deliberate indifference to serious medical needs and certainly cannot establish any policy or custom was "the moving force" behind any use of excessive force or deliberate indifference to serious medical needs. As such, the Separate County Defendants are entitled to summary judgment as a matter of law.

The Plaintiffs appears assert an excessive force claim(s) under both the Fourteenth and Eighth Amendments, but only one can even be brought. Pretrial detainees seeking to vindicate their rights to be free from excessive force find shelter in the Fourteenth Amendment's Due Process

Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389, 396–99, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015) (holding that a pretrial detainee alleging excessive force "must show only that the force purposely or knowingly used against him was objectively unreasonable"). Convicted prisoners seeking the same must turn to the Eighth Amendment's Cruel and Unusual Punishments Clause. *See Hudson v. McMillian*, 503 U.S. 1, 6–7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (holding that a convicted prisoner must show that the force was applied "maliciously and sadistically to cause harm").

With respect to a claim of deficient medical care in a jail, the Supreme Court has held that officials violate a prisoner's right to medical care only if their conduct amounts to "deliberate indifference to [the prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 108, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "Deliberate indifference" on the part of prison officials requires a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Deliberate indifference has both an objective and subjective component." *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir.2006). "The objective component requires a plaintiff to demonstrate an objectively serious medical need." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir.2009) (citing *Grayson v. Ross*, 454 F.3d 802, 808–09 (8th Cir.2006)). "The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." *Id*. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.s. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both

an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. *2000)(quoting Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment

decisions does not rise to the level of a constitutional violation." *Jolly,* 205 F.3d at 1096 *(quoting Estate of Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir.1995)); *Spann v. Roper*, 453 F.3d 1007, 1009 (8th Cir. Mo. 2006) (citing *Phillips v. Jasper County Jail*, 437 F.3d 791, 795 (8th Cir. 2006) (mere disagreement with treatment decisions does not rise to level of constitutional violation). Additionally, jail staff are entitled to rely on the opinions and actions of medical staff/providers. *See, e.g., Heidemann v. Rother*, 84 F.3d 1021, 1029 (8th Cir.1996).

To the extent that the Plaintiff seeks to hold Sheriff Lafayette Woods, Jr. liable personally for excessive force, such a an attempt would fail for at least two reasons. First, the Plaintiff has not sued Sheriff Woods in his individual capacity. *See supra* discussion of Defendants. Additionally, the Plaintiff cannot establish that Sheriff Woods was personally involved (e.g., used any force or even knew of any medical issues) in the alleged violations. "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [the plaintiffs] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [their] constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (citation and internal quotation marks omitted). A county official or employee may be held liable in his or her individual capacity only in a few well-delineated fact situations. Essentially there must be some personal involvement before any defendant may be held liable under § 1983. *See, e.g., Messimer v. Lockhart*, 702 F.2d 729 (8th Cir. 1983).

Because the Plaintiff (1) has not made - and cannot make - any personal claims against Sheriff Woods and (2) cannot make a direct action claim against the AACRMF because such claims are permitted only against insurers and the AACRMF is not an insurer (and certainly does not provide coverage for negligence), the Plaintiff's only real claim against the Separate County Defendants is against Jefferson County itself. For the reasons discussed below, however, those claims fail as a matter of law.

**Sovereign Immunity -** *McMillian v. Monroe County*

Arkansas Sheriffs are entitled to sovereign immunity under the U.S. Supreme Court's holding

in *McMillian v. Monroe County, Ala.*, 520 U.S. 781 (1997) for all of their law enforcement and detention activities. In the *McMillian* case, the U.S. Supreme Court held that an Alabama Sheriff was entitled to invoke the State's sovereign immunity because Sheriffs in the state of Alabama were policymakers for the state of Alabama in the arena of law enforcement and that Sheriffs were therefore entitled to sovereign immunity in civil lawsuits seeking official capacity liability against Sheriffs in any area of law enforcement. In light of the analysis and conclusion in the *McMillian* case, Jefferson County and the official capacity County Defendants (i.e, the County) in this action should be granted sovereign immunity and summary judgment in their official capacities.

### a. Civil Divisions of the State

In the case of *Mears v. Hall*, 263 Ark. 827 (1978), the Arkansas Supreme Court explained that Arkansas counties are agents of the State of Arkansas:

> Counties are *civil divisions* of the state for political and judicial purposes and are its [the state's] *auxiliaries* and *instrumentalities* in the administration of its [the state's] government [i.e., executive purposes]. *Lake v. Tatum*, 175 Ark. 90, 1 S.W.2d 554. They are a political subdivision of the state for the administration of justice and local government. *Pulaski County v. Reeve*, 42 Ark. 54. The very word "county" signifies a *circuit* or *portion* of the state resulting from a division of the state into such areas for the better government thereof and the easier administration of justice. 56 Am.Jur.2d 74, Municipal Corporations, etc., § 5.

*Mears v. Hall*, 263 Ark. 827 (1978) (emphases added). The *Mears* case echoes the words of the Arkansas General Assembly, defining counties as geographical subdivisions and agents of the state:

> A county is a political subdivision of the state for the more convenient administration of justice and the exercise of local legislative authority related to county affairs and is defined as a body politic and corporate operating within specified geographic limitations established by law.

A.C.A. § 14-14-102

### b. Executive Department of *State* Government

The first fact noted by the Supreme Court in support of its *McMillian* holding was the "especially important" fact that Alabama Sheriffs are members of the state executive department of Alabama. The same fact is true of Arkansas Sheriffs. Section 1 of Article 3 of the Arkansas Constitution ordains that the powers of the state government shall be divided into three distinct

departments -- the legislative, executive, and judicial. Since at least 1849, the Arkansas Supreme Court has held that Arkansas sheriffs are members of the executive department of state government. *State Bank v. Curran*, 10 Ark. 142 (1849) (the executive offices of sheriff and justice of the peace are incompatible and cannot be held by the same person at the same time, as the office of justice belongs to the judicial, and the office of sheriff to the executive, department of the state government.).

### c. State Constitution

Section 46 of Article 7 of the Arkansas Constitution created the office of Sheriff. The creation of the office of Sheriff by the Constitution is important for several reasons. First, it ensures that the office cannot be dissolved except by amendment of the Constitution (i.e., a state legislative act). Additionally, the Arkansas Constitution was enacted in 1874. The Arkansas State Police were created by statute in 1945, some 71 years later. Ark. Code Ann. §12-8-101. Accordingly, historically, Arkansas' county sheriffs were the sole executors of the essential state function of the enforcement of state law.

### d. Governor Commissions the Person Holding the Office

All county elected officials in Arkansas, including Sheriff Woods of Jefferson County, are commissioned by the Governor as a function of state statutory law. *See* Ark. Code Ann. § 14-14-1305.

### e. State Legislature Defines the Duties

During his term of office, no other county official has the authority to define the duties of a Sheriff in the State of Arkansas. Instead, the state legislature has long retained the sole authority to define, add to, and vary the duties of a sheriff. *See, e.g., Cain v. Woodruff County,* 89 Ark. 456 (1909).

The state legislature also establishes, by statute, the minimum and maximum compensation for county elected officials, including the Sheriff. See Ark. Code Ann. § 14-14-1204. State statutory law also defines the "powers" of the Sheriff and requires him to **"be a conservator of the peace in**

his county and ... cause all offenders against the laws of this state ... to enter into recognizance to keep the peace and appear at the next term of the circuit court" and to "certify to the clerk of the circuit court all recognizances taken by him." See Ark. Code Ann. § 14-15-501 (emphasis added). Arkansas sheriffs are the ex-officio tax collectors for the state in their respective counties and are also the chief enforcement and warrant officers for the circuit courts (courts of the state). Ark. Const. Art. 7, §46.

### f.  Only a State Official Can Remove a Sheriff from Office

An Arkansas Sheriff can only be removed from office when he has been convicted of "an offense involving incompetency, corruption, gross immorality, criminal conduct amounting to a felony, malfeasance, misfeasance, or nonfeasance in office." Ark. Code Ann. § 21-12-302. When this occurs, Arkansas statute requires that "a part of the sentence of the circuit court [state court] having jurisdiction shall be to remove such officer from office." *Id.* The clerk of the circuit court must then transmit to the Governor a certified copy of the state court's judgment. *Id.* In short, a Sheriff can only be removed from office by a state official, i.e., a circuit judge, who must thereafter notify the highest state official of the removal.

### g. Cooperation with State Police Required

Arkansas statutory law requires cooperation between sheriffs and the Arkansas State Police. Ark. Code Ann. § 12-8-111, entitled "Cooperation among agencies," provides as follows:

> (a) It shall be the duty of the Department of Arkansas State Police and its officers to cooperate with other law enforcement agencies of this state in the investigation and apprehension of criminals and the prevention of crime within the state and to use every means at their disposal in disseminating information that will more effectively expedite the detection of crime and the apprehension and conviction of criminals and promote the highest possible degree of efficiency in the enforcement of the criminal and traffic laws of the state.
>
> (b) The law enforcement agencies of the state shall furnish to the department such information as they may have or shall hereafter acquire upon request of the Director of the Department of Arkansas State Police relating to crime and criminals and otherwise cooperate with the department in the enforcement of the criminal and traffic laws of this state.

A.C.A. § 12-8-111.

h. Only Geographic Difference Between Authority of State Police and Sheriff

Ark. Code Ann. § 12-8-106, entitled "State police authority," provides, in pertinent part: as follows:

> (b) The department [of the Arkansas State Police] shall be conservators of the peace and as such *shall have the powers possessed by ... sheriffs in counties*, except that the department may exercise such powers anywhere in this state.

In short, the only difference between the law enforcement authority of the state police and sheriffs of the various counties is that the authority of sheriffs is geographically limited to their respective counties.

In the end, *McMillian* dictates that Arkansas Sheriffs, in their official capacities (i.e., the County) are broadly entitled to sovereign immunity in the arenas of law enforcement and detention and certainly where, as here, the performance of a quintessential state function (holding a sentenced state prisoner for the state prison system) is at issue.

## No Unconstitutional County Policy or Custom

In *Marsh*, the Eighth Circuit said: "[t]o prove the existence of a policy, a plaintiff must point to 'an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters.'" 902 F.3d at 752 (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). "There must be a causal connection between the [alleged] municipal policy or custom and the alleged constitutional deprivation in order to state a valid claim under § 1983." *Ulrich*, 715 F.3d at 1061; *Marsh*, 902 F.3d at 752 ("a direct causal link'). A claim of failure to train is merely an extension of a "policy or custom" claim per *Marsh*. *Id*. at 751.

It is not enough for the Plaintiff to show a written policy allegedly might have permitted unconstitutional conduct against the Plaintiff which caused injury. The Court then held:

> Two of the circumstances in which municipality liability can arise warrant discussion here: First, where a particular municipal action or policy 'itself violates federal law, or ***directs*** an employee to do so,' and second, where 'an official policy is lawful on its face and ***does not compel unconstitutional action***' but 'municipal action has led an employee to violate a plaintiff's rights,' and that action was taken with 'deliberate indifference' as to its known or obvious consequences.'"

*Id*. (emphasis added) (quoting *Szalba v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007) (en banc) (quoting in part *Bd. Of the County Comm'rs v. Brown*, 520 U.S. 397, 404, 407 (1997)). In *Hollingsworth*, the Court held: "[t]he City's policy on the use of a 'stun type device' was not unlawful on its face *and did not compel unconstitutional action*." *Id*. at 992 (emphasis added).

In *Handle v. City of Little Rock*, the Honorable District Judge Roy of this District held: "[i]n *Kerr*, the Court concluded that a municipal policy is not unconstitutional if it might *permit* unconstitutional conduct in some circumstance; it is unconstitutional only if it '*require[s]* its officers to act unconstitutionally.'" 772 F. Supp. 434, 438 (E.D. Ark. 1991) (quoting *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1554 (11th Cir. 1989) (emphasis in original)). Additionally, and importantly here, the Court in *Handle* said: "[a]s the record now stands, the plaintiff has presented only a vague and conclusory allegation of alleged uses of excessive force and one incident in which a jury found that excessive force was not used. Plaintiff's personal opinion and speculation on how the policies might be applied is of little value." 772 F.Supp. at 438.

Additionally, "…a failure to implement a specific policy does not equate to a failure to adopt a constitutionally adequate policy." *Whitney v. City of St. Louis*, 887 F.3d 857, 861, fn.5 (8th Cir. 2018). In *Szalba*, the Eighth Circuit ruled:

> But even so, Brooklyn Park's directives do not affirmatively sanction the use of the dogs in an unconstitutional manner. The policy is simply silent concerning the circumstances under which an officer should provide a warning before a canine is directed to bite and hold a suspect. The directives do not reflect a deliberate choice by policymakers to refrain from warning citizens about the use of dogs.

486 F.3d at 392. The Court said: "…a written policy that is facially constitutional, but files to give detailed guidance that might have averted a constitutional violation by an employee, does not itself give rise to municipal liability." *Id*.

Short of a written policy that directed non-policymaking officials to violate a person's constitutional rights, a Plaintiff must show a custom. Plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that

misconduct; and
3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas County Med. Dept.*, 725 F.3d 825, 828 (8th Cir. 2013) (citing *Thelms D. ex rel. Delores A v. Bd. of Educ. of City of St. Louis*, 934 F.2d 929, 932-33 (8th Cir. 1991). "'[A] single deviation from a written, official policy does not prove a conflicting custom.'" *Id*. at 828.

Plaintiff has no proof of any unconstitutional county policy or custom, no proof of any underlying violation of her decedent's rights (*see supra* and the summary judgment motion by Separate Defendant Baker, adopted and incorporate herein by reference),and certainly no proof to show that an unconstitutional county policy or custom was "the moving force" behind an underlying violation of his decedent's rights. That is, Plaintiff has not alleged and cannot prove a policy or custom of Jefferson County directed any jail staff to engage in unconstitutional conduct. Nor do the polices or customs even permit that, but the issue is whether an alleged policy or custom directs or compels unconstitutional action. Here, there is no such policy or custom. To the contrary, the proof establishes that Jefferson County had constitutionally appropriate policies in place to govern the provision of medical care to detainees in the county jail. *See* Ex. 2, Woods Affidavit & attached policy. Accordingly, the Defendants are entitled to summary judgment as a matter of law with respect to Plaintiff's official capacity/county claims.

### No Deliberate Indifference to Training and/or Supervision

To the extent that the Plaintiff attempts to make a training or supervision claim(s) against Jefferson , such claims likewise fail as a matter of law. When a defendant is sued for failure to train or supervise the offending actor, the supervisor is entitled to qualified immunity and summary judgment unless plaintiff proves that the supervisor (1) received notice of a pattern of unconstitutional acts committed by a subordinate, and (2) was deliberately indifferent to or authorized those acts.[6] *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir.2012). As against an entity

---

[6] This enunciation of the standard reveals why it should be inapplicable to entities (as opposed to individual supervisors, none of which were sued here). The County is inanimate and, thus, can only act through policies or customs, but the standard contains no policy or custom

such as Jefferson County for failure to train, the County can only be liable where "(1) the county's training practices were inadequate; (2) the county was deliberately indifferent to the rights of others in adopting them, such that the failure to train reflects a deliberate or conscious choice by the county; and (3) an alleged deficiency in the training procedures actually caused the plaintiff's injuries." *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (internal citations omitted).

Here, the Plaintiff has not and cannot present any evidence of deliberate indifference to any known training or supervision need prior to the events in this case. To the contrary, jail staff at the Jefferson County Jail are trained under a comprehensive training system that meets or exceeds the requirements of state law. This training includes jail standards training, medical and emergency response training, training in the policies of the jail, and training on recognizing and reporting medical problems to the jail's medical staff and/or emergency medical responders. Ex. 2, Woods Affidavit. Additionally, the Sheriff's department employs a chain of command, in addition to other mechanisms like camera systems, post-incident investigations, and other mechanisms, that provides for the comprehensive supervision of jail employees. *Id.* No case has ever imposed constitutional liability under a training or supervision theory in the face of such protocols, particularly where, as here, the Plaintiff can present no proof to show that training and/or supervision failures had created a known risk to the detainees' health or safety prior to the events in this case and that such risk had been ignored by the Defendant. *See Sturgeon v. Faughn,* 36 F.4th 804, 809-10 (8th Cir. 2022)*; Andrews v. Fowler*, 98 F.3d 1069 (8th Cir. 1996); *Henry v. Franks*, No. 3:22-cv-00186-PSH, 2024 WL 1311307, at *10 (E.D. March 27, 2024) (slip copy). As such, any training and/or supervision claims, no matter how couched, fail as a matter of law. The County Defendants are entitled summary judgment as a matter of law.

**C.     Punitive Damages Immunity**

---

prong. Even if it did, the Plaintiff in this case could not establish an unconstitutional county policy or custom as to training or supervision. See Ex. 2, Woods Affidavit.

16

The Plaintiff appears to make a claim(s) for punitive damages against all Defendants, but Jefferson County is absolutely immune from such damages as a matter of law and is thus, entitled to summary judgment with respect to the Plaintiff's claim for punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S. Ct. 2748, 2762, 69 L. Ed. 2d 616 (1981).

### III.  CONCLUSION

For the reasons set forth herein, the Separate Jefferson County Defendants are entitled to summary judgment as a matter of law.

Respectfully submitted,

ASSOCIATION OF ARKANSAS COUNTIES RISK MANAGMENT FUND; LAFAYETTE WOODS AND SAMUEL BAKER, JR., in their official capacities only, and JEFFERSON COUNTY, ARKANSAS; *Separate Jefferson County Defendant*s

Jason E. Owens
Ark. Bar. No. 2003003
JASON OWENS LAW FIRM, P.A.
**Mailing Address:** P.O. Box 850
Conway, Arkansas 72033-0850
**Physical Address:** 1312 W. Oak Street
Conway, Arkansas 72034
Telephone: (501) 764-4334
Telefax: (501) 764-9173
Email: owens@jowenslawfirm.com