IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**TANARIA HEARD, individually and as**
**Special Administrator of the Estate of**
**Dezmen McBride**                                                                                  **PLAINTIFF**

**v.**                                    **Case No. 4:24-cv-00325 KGB**

**ASSOCIATION OF ARKANSAS**
**COUNTIES RISK MANAGEMENT**
**FUND,** *et al.*                                                                                    **DEFENDANTS**

**ORDER**

Before the Court is a *Daubert* motion *in limine* filed by separate defendants Jefferson County, Arkansas; Association of Arkansas Counties Risk Management Fund; Lieutenant Samuel Baker, Jr., in his official capacity; and Sheriff Lafayette Woods, Jr., in his official capacity ("County Defendants") (Dkt. No. 32). Plaintiff Tanaria Heard, individually and as Special Administrator of the Estate of Dezmen McBride, responded in opposition (Dkt. No. 44).[1] For the following reasons, the Court grants, in part, and denies, in part, County Defendants' *Daubert* motion *in limine* (Dkt. No. 32).

**I.   Background**

Dezmen McBride was booked into custody at the W.C. "Dub" Brassell Detention Center on May 21, 2021 (Dkt. No. 16, ¶ 9). Mr. McBride died 15 days later on June 5, 2021, at the age of 18 years old (*Id.*, ¶¶ 9–10). Deborah McBride commenced this action pursuant to 42 U.S.C. § 1983 alleging that County Defendants and separate defendant Lieutenant Samuel Baker, Jr., in his individual capacity: were deliberately indifferent to Mr. McBride's serious medical needs; used

---

[1] Deborah McBride commenced this action and originally was the Special Administrator of the Estate of Dezmen McBride. After Ms. McBride's death, Tanaria Heard was substituted as the Special Administrator of the Estate of Dezmen McBride (Dkt. No. 1, ¶ 8).

excessive force against Mr. McBride; were negligent; were liable for Mr. McBride's wrongful death; violated the Equal Protection Clause; and intentionally inflicted emotional distress on Mr. McBride (Dkt. No. 16, ¶¶ 9–107).

### II.     Legal Standard

Federal Rule of Evidence 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

"Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony. The rule clearly is one of admissibility rather than exclusion." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal quotations and citations omitted).

Federal Rule of Evidence 704 provides that:

> (a) In General — Not Automatically Objectionable.  An opinion is not objectionable just because it embraces an ultimate issue.

> (b) Exception.  In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone.

The district court is required to determine at the outset whether an "expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993).  An expert's testimony

is helpful to the jury if the expert's specialized knowledge allows the jury to better understand the evidence. *Lee v. Andersen*, 616 F.3d 803, 808 (8th Cir. 2010). An expert is not helpful to the jury if the expert merely testifies on subject matter within the jury's knowledge or experience. *Id.* at 809. A court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

The district court must also decide if the expert's testimony and methodology are reliable, relevant, and can be applied reasonably to the facts of the case. *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012); *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010). Under *Daubert*, the district court must conduct this initial inquiry as part of its gatekeeping function. *David E. Watson*, 668 F.3d at 1015. The Court must be mindful that "*Daubert* does not require proof with certainty." *Sorensen v. Shaklee Corp.*, 31 F.3d 638, 650 (8th Cir. 1994). Rather, it requires that expert testimony be reliable and relevant. *Id.* "The inquiry as to the reliability and relevance of the testimony is a flexible one designed to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006) (quoting *Kumho Tire Co.*, 526 U.S. at 152).

The proponent of the expert testimony has the burden of establishing by a preponderance of the evidence the admissibility of the expert's testimony. *Id.* at 757–58. To satisfy the reliability requirement for admission of expert testimony, "the party offering the expert testimony must show by a preponderance of the evidence that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Barrett*, 606 F.3d at 980 (internal

3

quotation marks and citation omitted). To satisfy the relevance requirement for the admission of expert testimony, "the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue." *Id.* (citing *Marmo*, 457 F.3d at 757).

The Court examines the following four non-exclusive factors when determining the reliability of an expert's opinion: (1) "whether it can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error"; and (4) "[the method's] 'general acceptance.'" *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009) (quoting *Daubert*, 509 U.S. at 593–94). These factors are not exhaustive or limiting, and the Court must use the factors as it deems fit to tailor an examination of the reliability of expert testimony to the facts of each case. *Id.* In addition, the Court can weigh whether the expertise was developed for litigation or naturally flowed from the expert's research, whether the proposed expert ruled out other alternative explanations, and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case. *Id.* While weighing these factors, the Court must continue to function as a gatekeeper who separates expert opinion evidence based on good grounds from subjective speculation that masquerades as scientific knowledge. *Id.*

"As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (internal citation omitted). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Id.* at 929–30 (quoting *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1996)).

### III. Analysis

County Defendants request that the Court exclude the expert testimony of Dr. William L. Rutledge because, according to County Defendants, Dr. Rutledge's testimony and opinions "would not assist the trier of fact, contain irrelevant opinions and a legal opinion, invade the province of the jury, contain speculation, and would causes [*sic*] juror confusion in the least." (Dkt. No. 32, ¶ 2). County Defendants claim that, because the state crime lab found Mr. McBride's cause of death to be undetermined, Ms. Heard cannot present relevant medical evidence that any alleged delay in providing Mr. McBride with care resulted in Mr. McBride's death (Dkt. No 33, at 10). County Defendants further claim that Dr. Rutledge's assertion that County Defendants' deliberate indifference led to Mr. McBride's death is a legal opinion that is reserved for the Court (*Id.*).

Ms. Heard responds that Dr. Rutledge is qualified to testify based on his training, education, and experience (Dkt. No. 44, at 3). Ms. Heard further claims that a consideration of the *Daubert* factors warrants permitting Dr. Rutledge's testimony (*Id.*, at 6). Finally, according to Ms. Heard, that Dr. Rutledge's opinions embrace an issue to be decided by the jury does not warrant excluding his testimony (*Id.*, at 8).

Dr. Rutledge is a physician and surgeon in Little Rock, Arkansas, who has practiced medicine in the state since 1984 (Dkt. No. 44-3, at 1). Dr. Rutledge's report dated June 12, 2024, concerns whether the care that Mr. McBride received was proper and within care standards (*Id.*). In his report, Dr. Rutledge provides his professional opinion in this matter based on a review of the following: the medical examiner's report; medical records from Jefferson Regional Medical Center; attorney notes of timeline; call log and incident report from Jefferson County Sheriff's Department; and a summary of the investigation (*Id.*).

Dr. Rutledge offers many opinions in his report, and he states that he gives those opinions "with a reasonable degree of medical certainty." (*Id.*, at 4). Dr. Rutledge opines, in part, that "although the CT scan showed no intracranial hemorrhage, Mr. McBride clearly exhibited multiple signs of increased intracranial pressure." (*Id.*, at 3). Namely, Mr. McBride exhibited nausea, vomiting, headaches, visual changes, changes in behavior, weakness, inability to stand and walk, confusion, and possible seizure activity (*Id.*) Dr. Rutledge also opines that the failure to get Mr. McBride evaluated and treated between June 2, 2021, and June 5, 2021, "more probably than not caused his demise." (*Id.*). In addition, Dr. Rutledge opines that "Mr. McBride progressively worsened" on June 2, 3, and 4, 2021, "as personnel were deliberately indifferent." (*Id.*, at 4). Dr. Rutledge's report concludes that "[t]he delay in diagnosis and treatment of Mr. Dezmen McBride due to deliberate indifference by jail personnel and nursing personnel led to his death on June 5, 2021." (*Id.*).

County Defendants do not appear to question or challenge Dr. Rutledge's qualifications or the methodology underlying his findings. On the record before the Court, the Court determines that Dr. Rutledge is qualified to offer the expert opinions he proposes, and the Court is satisfied that his methodology comports with the *Daubert* standard.

County Defendants instead question the relevancy of Dr. Rutledge's opinion testimony (Dkt. No. 33, at 10). County Defendants assert that Dr. Rutledge's opinion is "unhelpful to the trier of fact considering the prevailing law, and threatens to cause jury confusion—particularly in a case that is not complex . . . ." (*Id.*). Contrary to County Defendants' assertions, Dr. Rutledge's opinions are relevant to the issues in this matter—namely whether County Defendants were deliberately indifferent to Mr. McBride's medical needs and consequently contributed to or caused Mr. McBride's death. *See* Fed. R. Evid. 401.

The Eighth Circuit Court of Appeals has explained that the first prong of the deliberate indifference test, which is utilized in failure to render medical aid claims, asks whether a plaintiff demonstrated an objectively serious medical need. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)).

However, if a plaintiff "alleges that a delay in medical treatment constituted a constitutional deprivation, 'the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment.'" *Id.* (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). "In other words, if a plaintiff is relying on a delay in treatment theory, there is an additional requirement to place verifying medical evidence in the record to show there was a detrimental effect caused by the delay." *Cheeks v. Belmar*, 80 F.4th 872, 878 (8th Cir. 2023), *cert. denied sub nom. Jakob v. Cheeks*, 144 S. Ct. 1030 (2024). A plaintiff's "failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs." *Coleman*, 114 F.3d at 784.

More specifically, the Eighth Circuit has explained that "[a] prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (cleaned up) (citation omitted). Further, if the treatment is for a sophisticated medical condition, "testimony is required to show proof of causation." *Alberson v. Norris*, 458 F.3d 762, 765–66 (8th Cir. 2006).

The Eighth Circuit Court of Appeals has determined in a series of cases that, when alleging a violation of 42 U.S.C. § 1983 based on an alleged delay in medical treatment, a plaintiff's failure

7

to offer such evidence is fatal to his claim. *See Hancock v. Arnott*, 39 F.4th 482, 487 (8th Cir. 2022) (concluding the plaintiff's failure to establish the detrimental effect of the delay in performing surgery to remove a hernia through medical evidence was fatal to his claim); *Redmond v. Kosinski*, 999 F.3d 1116, 1120–21 & n.2 (8th Cir. 2021) (determining it was necessary to demonstrate the effect of the deprivation of specific forms of medical treatment because the plaintiff did "not allege the defendants delayed all treatment, but that they failed to provide the proper treatment at the proper time"); *Jackson v. Riebold*, 815 F.3d 1114, 1120 (8th Cir. 2016) (holding evidence of a detrimental effect was necessary because the plaintiff relied on a delay in treatment theory); *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (holding a plaintiff alleging delay in medical treatment must demonstrate a detrimental effect of the delay with medical evidence).[2]  For these reasons, the Court will not exclude Dr. Rutledge's testimony as irrelevant or unnecessary given the theory of the case.

Moreover, that the state crime lab found Mr. McBride's cause of death to be undetermined does not negate the relevancy of Dr. Rutledge's opinions on Mr. McBride's cause of death. *See Adams v. Toyota Motor Corp.*, 867 F.3d 903, 918 (8th Cir. 2017), *as corrected* (Aug. 14, 2017) (quoting *Daubert*, 509 U.S. at 596) ("As long as the expert's scientific testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset."). This is especially true where, as here, County Defendants have disclosed the report of Thomas D.

---

[2] These cases are distinguishable from claims alleging that officials never called for medical assistance—thus denying medical aid altogether. In such cases, where no medical aid was provided, there may not be a need to provide evidence demonstrating the detrimental effect of the lack of aid. *Cheeks*, 80 F.4th at 878 (citing *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008)) (analyzing a claim where no medical aid was provided without requiring the plaintiff to also demonstrate the detrimental effect).

Fowlkes, M.D., who purports to opine on similar issues on County Defendants' behalf (Dkt. No. 44-4).

County Defendants also object to Dr. Rutledge's opinion on the grounds that Dr. Rutledge gives a legal opinion that is reserved for the Court (Dkt. No. 33, at 10).  Specifically, Dr. Rutledge opines that jail "personnel were deliberately indifferent," and concludes that "[t]he delay in diagnosis and treatment of Mr. Dezmen McBride due to deliberate indifference by jail personnel and nursing personnel led to his death on June 5, 2021." (Dkt. No. 44-3, at 4).

Although an expert's "opinion is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704(a), an expert's testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).  Because "[t]he jury's role is limited to settling disputes as to predicate facts," experts are precluded from opining on legal conclusions which are determinations for the court and not the jury to make.  *See Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (internal citations omitted) (holding that it was reversible error to allow an expert to testify that the officers' conduct complied with the Fourth Amendment because this testimony constituted an impermissible legal conclusion); *see also Estes v. Moore*, 993 F.2d 161, 163 (8th Cir. 1993) (holding that expert testimony about whether there was probable cause to arrest the arrestee was properly excluded as a statement of a legal conclusion).

When examining this standard and applying it within the context of a Fourth Amendment excessive force claim, one district court in the Eighth Circuit explained that Federal Rule of Evidence 704(a):

> permits testimony embracing an ultimate issue but requires exclusion of any testimony providing a legal conclusion. The distinction is admittedly fine. Expert opinions can embrace the ultimate issue of *fact*, for example, including whether standards or practices are applicable to a given situation and whether those standards or practices were met in the situation. *Peters v. Woodbury Cty., Iowa*, 979 F. Supp. 2d 901, 922 (N.D. Ia. 2013) (explaining *Berry v. City of Detroit*, 25

> F.3d 1342 (6th Cir. 1994)).  However, an expert cannot testify that "following or failing to follow certain standards met or failed to meet the applicable *legal* standard," such as the "reasonableness" of [an officer's] actions.  *Id.*
>
> The rationale for this distinction is simple.  Because the jury is a fact-finding body, testimony putting forth legal conclusions, which simply tells the jury which conclusion to reach, is not helpful.  FRE 704 Advisory Committee's Notes.  Contrarily, expert testimony that an officer's actions did or did not comply with a standard or practice "provide[s] the jury with concrete examples against which to consider the more abstract question of whether an 'objectively reasonable officer' would have employed the same force."  *Peters*, 979 F. Supp. 2d at 923 (citing *United States v. Perkins*, 470 F.3d 150, 159–60 (4th Cir. 2006)).

*K.W.P. v. Kan. City Pub. Schs.*, 296 F. Supp. 3d 1121, 1127 (W.D. Mo. 2017).

Proving deliberate indifference requires that the plaintiff "prove that officials knew about excessive risks to his health but disregarded them and that their unconstitutional actions in fact caused his injuries."  *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).  In this case, what County Defendants knew, what they did or did not do in response to that knowledge, and how quickly they acted or failed to act are all among the many questions of fact for the jury to determine. *See Peterson*, 60 F.3d at 475.  Because Dr. Rutledge's testimony that County Defendants were deliberately indifferent is "not a fact-based opinion, but a statement of legal conclusion," Dr. Rutledge's testimony using this precise legal phrase is excluded.  *See Peterson*, 60 F.3d at 476 (citing *Estes*, 993 F.2d at 163).

> As another district court in the Eighth Circuit explained:
>
> (1) an expert may provide opinions that are phrased in such a manner as to avoid the baseline legal conclusion, for example, the "reasonableness" of the force used; (2) an expert may also respond to *hypothetical* or *abstract questions* about the reasonableness of the force used in stated circumstances; (3) an expert may also offer a *personal* assessment of the use of force, such as that the expert did or did not see any reason for the force used in the incident in question; but (4) an expert may *not* opine that the conduct in question transgressed the applicable *legal* standard, such as "objective reasonableness."

*Peters,* 979 F. Supp. 2d at 924 (citing *Perkins*, 470 F.3d at 156–60).

10

The Court rules *in limine* that Dr. Rutledge may not offer testimony using the precise legal phrase "deliberately indifferent"; Dr. Rutledge may still offer opinions to the extent that they are within the scope of his expertise as a physician and do not encroach on a question of fact reserved for the jury.

### III. Conclusion

For the foregoing reasons, the Court grants, in part, and denies, in part, County Defendants' *Daubert* motion *in limine* (Dkt. No. 32). County Defendants' motion is granted to the extent that Dr. Rutledge may not opine on County Defendants' conduct using the precise phrase "deliberately indifferent." To the extent the County Defendants seek to exclude Dr. Rutledge's expert testimony on any other basis raised in the motion, the Court denies the motion.

It is so ordered this 4th day of April, 2025.

_Kristine G. Baker_
Kristine G. Baker
Chief United States District Judge